**SIGNED THIS: September 02, 2011**

_____

**THOMAS L. PERKINS**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CENTRAL ILLINOIS ENERGY** | ) | |
| **COOPERATIVE,** | ) | No.  09-81409 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **RICHARD E. BARBER, not individually** | ) | |
| **but as Trustee for the estate of Central** | ) | |
| **Illinois Energy Cooperative,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.  10-8067 |
| | ) | |
| **HIEL TRUCKING, INC., a Delaware** | ) | |
| **Corporation,** | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on cross motions for summary judgment.  The

Plaintiff, Richard E. Barber (TRUSTEE), as Trustee for the Chapter 7 estate of the Debtor,

Central Illinois Energy Cooperative (DEBTOR), sued the Defendant, Hiel Trucking, Inc.,

to avoid and recover certain payments made by the DEBTOR to Hiel Trucking, on the theory that the payments were fraudulent transfers.

The avoidability of the DEBTOR'S payments to Hiel Trucking centers around the DEBTOR'S relationship with Central Illinois Energy, LLC (CIE). The DEBTOR owned a majority interest in Central Illinois Holding Company, LLC, the holding company for CIE, an entity formed in 2004 for the purpose of constructing, owning and operating an ethanol production plant and waste-coal fired power generating facility near Canton, Illinois. The DEBTOR is an agricultural cooperative formed in 2001 under Illinois law for the purpose of constructing, owning and operating a grain handling facility on land adjacent to the ethanol plant. The DEBTOR'S members are Central Illinois farmers who intended to grow and sell corn, through the DEBTOR, to CIE for processing into ethanol and other byproducts.

Construction of CIE'S ethanol and power plants and the DEBTOR'S grain handling facility were occurring simultaneously in 2005, 2006 and 2007. In 2007, both construction projects encountered financial difficulties resulting in cash shortages. The DEBTOR'S solution to its problems was to sell its assets to a third party for the cash and promises of future payments needed to complete construction of the grain handling facility, while undertaking a conditional obligation to repurchase the assets in the future. On June 12, 2007, the DEBTOR entered into a written Purchase Agreement to sell its assets to Green Lion Bio-Fuels, LLC (GREEN LION). The parties agree that the sale of the DEBTOR'S assets to GREEN LION was consummated, but dispute the effect of the sale on the DEBTOR'S obligations.

Also on June 12, 2007, the DEBTOR, GREEN LION and CIE entered into a separate

agreement contemplating the refinancing of CIE'S debt in the amount of $133,000,000 by

GREEN LION.[1]  This "Buyback Agreement" provides that the DEBTOR'S performance of

its obligations under the Purchase Agreement are being performed by CIE personnel

"except for the obligation to pay for work performed."  It further provides that if GREEN

LION'S refinancing of CIE'S debt does, in fact, occur, then CIE shall purchase from GREEN

LION all of the assets GREEN LION purchased from the DEBTOR under the Purchase

Agreement.  It further provides that if GREEN LION'S refinancing of CIE'S debt does not

occur by November 1, 2007, then the DEBTOR shall repurchase all of the assets sold under

the Purchase Agreement, for the sum of $7,750,000 plus costs, with the repurchase to close

by May 1, 2008.

The fact that CIE'S and the DEBTOR'S construction projects were occurring

simultaneously on adjacent ground is significant because it appears Hiel Trucking sold and

delivered materials to both.  From its invoices, it appears that Hiel Trucking delivered rock,

gravel and hydrated lime to the joint construction site, to be used primarily in the

construction of roadways and parking areas.  The invoices contain charges for the cost of

the materials as well as the cost of transportation.[2]

Submitted by Hiel Trucking is the declaration of its corporate secretary, Travis Hiel,

who also served on CIE'S board of directors and, according to the DEBTOR'S Statement

---

[1]A copy of the agreement, referred to as the "Buyback Agreement," is attached as an exhibit to Claim 9-1 filed by
GREEN LION asserting a claim against the DEBTOR in the amount of $3,650,903.97.  The cross motions do not refer
to the Buyback Agreement, but it provides context for and may be relevant to the interpretation of the Purchase
Agreement, if not excluded by the parol evidence rule.

[2]It is not clear whether Hiel Trucking bought and paid for the materials from the quarries or whether Hiel Trucking
was acting as a billing and collection agent and was simply passing the payment for the materials back to the quarries.

3

of Financial Affairs, served as a Director and President of the DEBTOR until 2008. Travis Hiel asserts that both the DEBTOR and CIE "contracted verbally with Hiel (Trucking) at various times for the delivery of rock, pea gravel and lime," that CIE paid for deliveries it ordered and the DEBTOR paid for its orders. The declaration of Michael W. Smith is also attached. Like Travis Hiel, Smith also wore more than one hat as he was the DEBTOR'S President and Chief Executive Officer, as well as CIE'S General Manager. Parroting Hiel, Smith also asserts that CIE paid for deliveries of rock, gravel and lime that it ordered and the DEBTOR paid for the product it ordered.

The TRUSTEE disputes the assertions of fact made by Travis Hiel and Michael Smith, alleging that the record contains contrary evidence. The TRUSTEE relies upon the fact that Hiel's invoices are all directed to the DEBTOR, not CIE, and that of the 37 invoices submitted by Hiel from November 2, 2006 through December 6, 2007, all but two were paid with a check from the DEBTOR. CIE paid invoices 45198 and 45316 with its check dated 11/14/07.

## ANALYSIS

The TRUSTEE'S cross motion seeks partial summary judgment. In Count I of his amended complaint, brought under section 548(a) with a two year reach-back period, the TRUSTEE seeks avoidance of two payments that occurred on June 8, 2007 and August 23, 2007. In Counts II and III, brought under section 544 and using the UFTA'S four year reach-back period, he seeks to avoid seven different payments, made between January 8, 2007 and May 4, 2007. His cross motion seeks summary judgment only as to the single payment made by the DEBTOR to Hiel Trucking on August 23, 2007, in the amount of

4

$14,330.97, on the theory that this payment was not made for the benefit of the DEBTOR, but for GREEN LION. This theory stands on his interpretation of the Purchase Agreement that GREEN LION assumed the obligation to pay for completion of the construction of the grain handling facility and that the DEBTOR was relieved of that obligation.

Hiel Trucking disputes the TRUSTEE'S interpretation, contending that under the Purchase Agreement GREEN LION assumed only certain specified payments to Nostaw, Inc., and to Leander Construction with the DEBTOR remaining liable for all other construction costs incurred in completing the project. This contention is supported by the declarations of Travis Hiel and Michael Smith. The Purchase Agreement itself, however, fails to expressly allocate the financial responsibility for post-closing construction costs and either inference is plausible. On summary judgment motions, all reasonable inferences must be drawn in favor of the party opposing the motion. *In re Chambers*, 348 F.3d 650 (7th Cir. 2003); *In re Crystal Apparel, Inc.*, 220 B.R. 816 (Bankr.S.D.N.Y. 1998). This issue of fact is genuine, disputed and material. Therefore, the TRUSTEE'S motion must be denied.

Where the defendant is moving for summary judgment, he has the initial burden to show that the plaintiff has failed to establish one or more essential elements of its case. *Hugh v. Butler County Family YMCA,* 418 F.3d 265, 267 (3rd Cir. 2005). Hiel Trucking contends that to the extent CIE and the DEBTOR each contracted for deliveries of rock, gravel and lime, they each paid Hiel Trucking directly for the materials used on their own projects. So say Travis Hiel and Michael Smith in their declarations. Thus, says Hiel Trucking, the TRUSTEE'S theory that the DEBTOR paid for CIE'S materials has been refuted.

5

The TRUSTEE differs, criticizing the Hiel and Smith declarations as conclusory. Noting that all of the invoices and delivery tickets of Hiel Trucking that are attached to its motion show that Hiel invoiced the DEBTOR for every delivery to the joint construction site and that the DEBTOR paid each Hiel invoice, except for certain invoices to the DEBTOR that CIE paid in November, 2007, the TRUSTEE argues that there is no basis in the record from which to distinguish the materials delivered by Hiel used by CIE from those used by the DEBTOR. Without that basic information, it cannot be established that all of the DEBTOR'S payments were for materials used by it and not by CIE.

The Court agrees with the TRUSTEE that the evidence presented at this stage is inconclusive. The report of the TRUSTEE'S accountant, Neil Gerber, evidences a regular practice by the DEBTOR to use its funds to pay for materials, goods and services supplied to CIE. Most of the invoices and delivery tickets submitted by Hiel Trucking reference "CIE" without further identifying the buyer as the DEBTOR (CIE Co-op) or CIE (the LLC). Moreover, even though Hiel Trucking would have separate records of its sales to CIE (the LLC), no such records were submitted to support its allegation that deliveries to CIE were billed to and paid for by CIE, not the DEBTOR. Without such easily obtainable backup documentation, the general conclusions of Travis Hiel and Mike Smith are insufficient to refute the contrary inference that the DEBTOR may have paid Hiel Trucking for CIE'S materials. Furthermore, the declarations do not refer to the specific payments at issue in the amended complaint. Finally, the declarations do not refute the inference that Hiel Trucking was delivering rock and gravel to the site in combined loads without bothering to separate, or separately bill for, what the DEBTOR purchased from what CIE purchased.

6

The lack of specificity of the Hiel and Smith declarations, as well as the Gerber report, lead the Court to conclude that a genuine issue of disputed material fact exists as to whether some or all of the payments at issue were for materials used by CIE and not the DEBTOR.  Therefore, the Defendant's motion for summary judgment must be denied.  It is not necessary to address the other arguments raised by the parties at this stage.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###